Packers Development Corporation v. Commissioner.
Packers Development Corp. v. Commissioner
Docket No. 6137-64.
United States Tax Court
T.C. Memo 1967-188; 1967 Tax Ct. Memo LEXIS 72; 26 T.C.M. (CCH) 932; T.C.M. (RIA) 67188; September 28, 1967
Gregory Gramling, Jr., 739 N. Broadway, Milwaukee, Wis., and *73 William Fitzhugh Fox, for the petitioner. Robert M. Burns, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following income tax deficiencies against petitioner: Taxable year
Deficiency
1959
$3,140.76
1960
7,857.55
1961
6,111.45
There are two issues for decision: (1) Whether petitioner was a personal holding company in the years 1959, 1960, and 1961 so as to be subject to the personal holding company surtax on any undistributed personal holding company income during such years; and (2) whether compensation in the amount of $5,200 per annum paid by petitioner to its president and sole employee, Willard A. Gebhardt, was unreasonable to the extent of $4,000 in each of the years 1959, 1960, and 1961. In an amended petition filed on March 16, 1966, petitioner claimed net operating loss carrybacks from the years 1962 and 1963 to the years 1959 and 1960, respectively. Respondent has conceded a portion of the alleged carryback from the year 1963 to the year 1960. The remaining net operating loss carrybacks claimed for the years 1959 and 1960 can be given effect in the Rule 50 computation. *74 Findings of Fact Some of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Packers Development Corporation (herein called petitioner) is a Wisconsin corporation organized on October 27, 1955. At the time of filing its petition in this proceeding the petitioner's principal office was located in Milwaukee, Wisconsin. It filed its United States corporation income tax return for the taxable years 1959, 1960, and 1961, on the cash basis, with the district director of internal revenue at Milwaukee, Wisconsin. Waivers were executed on behalf of petitioner which extended the statutory period for assessment to September 30, 1964. The notice of deficiency herein was mailed to petitioner on September 29, 1964. On December 28, 1964, petitioner changed its name to Gebhardt's Livestock Research, Inc. All of its outstanding stock during the years 1959 through 1963 was held as follows: Shares
Willard A. Gebhardt, President
22
Mrs. Edwin J. Radtke (Mrs. Radtke's
stock was repurchased by the peti-
tioner as treasury stock in the Fall
of 1961.)
22
Willard H. Ames, Vice president
2
E. Holming
2
H. B. Howe
2
Total
50
*75 Advanced Engineering Corporation (hereinafter called Advanced Engineering) is a Wisconsin corporation organized in 1929. During the years 1955 and 1956 the petitioner and Advanced Engineering shared the same corporate address, 1802 W. North Avenue, Milwaukee, Wisconsin. During the years 1957 through 1963 they shared the same corporate address at 3625 Elm Street in Milwaukee. They also shared many physical assets during the years in issue. All of Advanced Engineering's outstanding stock during the years 1959 through 1963 was held as follows: 1959
1960
1961
1962
1963
Willard A. Gebhardt, President
26
26
26
26
27
W. J. Gebhardt (Son of Willard A. Gebhardt)
10
10
10
10
10
Edwin J. Radtke
11
11
1
1
0
Willard H. Ames, Vice president
3
3
13
13
13
Total
50
50
50
50
50
Willard A. Gebhardt (hereinafter called Gebhardt) is an expert in the field of cooling and freezing meats after slaughter. He was president of both petitioner and Advanced Engineering during the years 1959 through 1963 and also served as petitioner's general manager and treasurer. On March 1, 1955, Gebhardt and Edwin J. Radtke were granted patent number 2,703,223, *76 protecting a revolutionary system for cooling meats known as Klean-Kold. On November 1, 1955, Gebhardt and Radtke licensed this patent to petitioner at a price of $22.50 per unit. On the same date the petitioner granted a nonexclusive license on the Klean-Kold patent to Advanced Engineering at a price of $55 per unit. Advanced Engineering thereupon engaged in the manufacturing and installation of Klean-Kold units. Prior to that time, Advanced Engineering had been engaged only in the sales of refrigerating equipment to meatpackers. On November 19, 1963, Gebhardt was granted patent number 3,111,012 covering the Snap-E-Chiller cooling system. This system represented a great improvement over the Klean-Kold unit. Through its use, the time needed to cool some meats after slaughter was reduced from 72 hours to 8 hours. In a document dated December 9, 1959, Gebhardt assigned his right in the Snap-E-Chiller unit to petitioner in return for the sum of $1.00. Prior to that date, on February 6, 1959, petitioner had conveyed its work relating to the development of Snap-E-Chiller, then known as Compress-O-Vac, to Advanced Engineering in return for $227 for each unit sold. Gebhardt provided most *77 of the research behind the development of Snap-E-Chiller although each of petitioner's stockholders, except Mrs. Radtke, contributed ideas or designs within his own professional field. Gebhardt also talked to and observed people as they purchased their meat products in an effort to ascertain those factors required of any new cooling system from the consumer's viewpoint. After the Snap-E-Chiller cooling system was fully developed, Advanced Engineering sold and installed it. At the same time, Gebhardt would instruct the purchaser on the procedure for handling meat within this new system. This part of the operation dealt with preparing and treating the purchaser's meat, not the mechanics behind the refrigeration equipment. During the years 1959 through 1963 the petitioner's reported gross receipts were derived from its agreements with Advanced Engineering concerning the Klean-Kold and Snap-E-Chiller cooling systems. The income which petitioner received as a result of the Klean-Kold patent was derived solely from royalty and licensing payments, not from personal services rendered by it. Petitioner's reported gross income for the years 1959 through 1963 was as follows: 1959
1960
1961
1962
1963
Klean-Kold
$47,575
$39,655
$39,930
$26,180
0
Snap-E-Chiller
2,951
4,086
4,767
0
$4,086
$50,526
$43,741
$44,697
$26,180
$4,086
*78 In its Federal income tax returns, Advanced Engineering deducted these payments to petitioner in the following manner: 1959
1960
1961
1962
1963
Royalty expense
$50,526
$39,655
$39,930
$26,180
0
Licensing charge
0
4,086
4,767
0
$4,086
During the years 1959 through 1963 Gebhardt was paid the following amounts as compensation by Advanced Engineering: Year
Amount
1959
$50,000
1960
41,500
1961
56,000
1962
26,000
1963
46,000
From amounts received by it in connection with the Klean-Kold patent, petitioner distributed the following royalty payments to Gebhardt and Edwin J. Radtke: Year
Gebhardt
Radtke
Total
1959
$19,462.50
$19,462.50
$38,925.00
1960
16,222.50
16,222.50
32,445.00
1961
16,335.00
16,335.00
32,670.00
1962
10,710.00
10,710.00
21,420.00
1963
0
0
0
At the first meeting of petitioner's directors, Gebhardt was authorized a salary of $100 per week. In its Federal income tax returns for each of the years 1959 through 1963, petitioner claimed a $5,200 deduction, designated "commissions," which represented the salary paid to Gebhardt. Gebhardt reported these payments *79 as "commissions" on his personal income tax returns for those years. Petitioner paid the following dividends during the years 1955 through 1963: Year
Amount
1955
$ 990
1956
0
1957
6,000
1958
3,000
1959
0
1960
0
1961
2,500
1962
0
1963
0
In his notice of deficiency dated September 29, 1964, respondent determined (1) that petitioner is a personal holding company under section 542(a) and liable for the surtax for the years in issue and (2) that only $1,200 of the $5,200 claimed by petitioner constitutes a "reasonable allowance for commissions" paid in 1959, 1960 and 1961. Ultimate Finding The amount of $5,200 paid by petitioner to Gebhardt as compensation in each of the years 1959, 1960 and 1961 was reasonable. Opinion It is clear that petitioner was a personal holding company in the years 1959 through 1961, and is therefore liable for a surtax on any undistributed personal holding company income during such years. Section 542(a) of the Internal Revenue Code of 1954[1] defines a personal holding company as one whose personal holding company income is at least 60 percent (80 percent for taxable years ending prior to *80 December 31, 1963) of its adjusted ordinary gross income and 50 percent in value of whose outstanding stock is owned by five or less individuals. "Personal holding company income" is defined as dividends, interest, royalties and annuities. These requirements fit the petitioner. In each of the years 1959 through 1961 well over 80 percent of petitioner's adjusted ordinary gross income was derived from the payment of royalties by Advanced Engineering under the Klean-Kold licensing agreement. As evidenced by their treatment in the income tax returns of petitioner and Advanced Engineering, these royalty payments amounted to 94 percent of petitioner's gross income in 1959, 90 percent in 1960 and 89 percent in 1961. Moreover, under the licensing agreement between petitioner and Advanced Engineering dated November 1, 1955, petitioner did not perform any active services in consideration for these payments. See O'Connor v. Commissioner, 260 F. 2d 358 (C.A. 6, 1958), affirming per curiam a Memorandum Opinion of this Court. The petitioner also meets the stock ownership *81 requirement of a personal holding company as set out in section 542(a)(2). In the years before us the petitioner's total outstanding stock was never held by more than five individuals. Accordingly, we hold for the respondent on this issue. And under section 545(b)(4) any alleged and partially conceded net operating loss carrybacks from the years 1962 and 1963 do not affect the computation of petitioner's personal holding company surtax liability for the years in issue. As to the second issue, i.e., whether the annual payments of $5,200 to Gebhardt were reasonable compensation for services actually rendered, petitioner stresses that Gebhardt, as its employee, was required to "familiarize himself with the procedures, designs, and operations of each packing house customer who would be purchasing his cooling systems." In addition, it is argued that Gebhardt performed tests pertaining to a customer's meat for pure research purposes, and that this led to the design of new refrigeration systems. Respondent, on the other hand, contends that Gebhardt performed "minimal" services for petitioner and that $1,200 is reasonable compensation for the services he rendered as its general manager. *82 Gebhardt spent a great deal of time showing meat packers how to handle and process their meat products. Petitioner attempts, albeit unsuccessfully, to distinguish this from the sale and installation of Klean-Kold and Snap-E-Chiller units by Advanced Engineering. Each packer to whom Gebhardt gave instructions and assistance was either an actual or a potential customer of Advanced Engineering, and such advice was necessary before a packer could successfully use a new cooling system. It appears that there was not a single instance in which Gebhardt did not investigate a customer's meat and processes before the initial introduction of Snap-E-Chiller units in a packing plant. We view Gebhardt's explanation of how meat had to be handled in Advanced Engineering's cooling systems as a customer service directly related to the sale of those systems, As a customer service, the time spent explaining the cooling systems was related to the business of Advanced Engineering rather than to the business of petitioner. Consequently, the claimed deductions cannot be allowed to petitioner on that ground. Petitioner likewise fails in its contention that the customer services in dispute were directly *83 related to its business on the theory that the more services it provided, the more sales Advanced Engineering made of Klean-Kold and Snap-E-Chiller units, thereby increasing the royalties and licensing fees which petitioner would receive. Petitioner had no obligation under its written agreements with Advanced Engineering to perfrom such services was too indirect to result form these services; and any benefit it derived in an ordinary and necessary business expense deduction for petitioner. We believe, however, that Gebhardt engaged in sufficient research for petitioner to justify an annual compensation of $5,200. Advanced Engineering never engaged in research prior to 1955. The Snap-E-Chiller unit was developed subsequent to 1955 and after petitioner was incorporated. Each of petitioner's shareholders, except Mrs. Radtke, was approached by Gebhardt because of expertise which the shareholder could contribute in an area critical to the development of Snap-E-Chiller. Petitioner was assigned all rights to the Klean-Kold patent but granted Advanced Engineering only a nonexclusive license to it; therefore, petitioner still had an interest in any improvements or modifications which could *84 be made on that patent. Gebhardt spent time talking to women shoppers and trying to understand what was required of meat products from a consumer viewpoint. This was general groundwork behind the initial development of Snap-E-Chiller. These factors persuade us that petitioner engaged in research independent of Advanced Engineering's sales of the Klean-Kold and Snap-E-Chiller cooling systems. Indeed, it seems that Snap-E-Chiller was developed as a result of such research and that, in these circumstances, the $5,200 per annum which Gebhardt received for providing this research was reasonable. Respondent argues that since Gebhardt received a salary of nearly $50,000 per annum from Advanced Engineering as well as substantial royalty payments from petitioner, any additional amounts which he received from petitioner must have been dividends or additional royalty payments. He implies that there should be an upper limit on Gebhardt's total reasonable compensation. We cannot agree. Gebhardt was a leading expert and had a nationwide reputation in the field of handling and cooling meats. His Klean-Kold and Snap-E-Chiller refrigeration systems were revolutionary developments in the meatpacking *85 industry. As we see it, Gebhardt provided valuable and necessary services to petitioner as well as to Advanced Engineering. There is no limitation on the number of employers for whom an individual can perform services. Cf. E.B. & A. C. Whiting Co., 10 T.C. 102, 114-118 (1948). We also disagree with respondent's contention that Gebhardt could draw no salary from petitioner because he was under no written obligation to assign any discoveries or inventions to petitioner. Gebhardt testified that few contracts were ever drawn which related to the sale of Snap-E-Chiller and Klean-Kold units. Under these circumstances it is understandable why petitioner did not require a written contract pertaining to research done by its employee, Gebardt, who was its principal stockholder. While patent law requires that a patent be issued in the name of an individual, Gebhardt assigned any rights or interest he might have in Snap-E-Chiller before he even applied for a patent. Petitioner's other stockholders contributed ideas to the development of Snap-E-Chiller, but received no compensation. Evidently they anticipated dividends from petitioner in return for their contributions. In view of *86 these facts, we think the petitioner at least had an implied agreement with Gebhardt that any refrigeration processes developed by him would be petitioner's property. Accordingly, we decide this issue in favor of petitioner by holding that the amounts paid to Gebhardt in each of the years 1959, 1960 and 1961 constituted reasonable compensation for services rendered and that such amounts are deductible by petitioner as ordinary and necessary business expenses under section 162(a)(1). Decision will entered under Rule 50. Footnotes
1. All subsequent references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩